**TUILEFANO VAELA`A,**
**as CHAIRMAN of the IMMIGRATION BOARD, Plaintiff,**

**v.**

**TAUESE P. SUNIA, GOVERNOR OF AMERICAN SAMOA,**
**TOETOGATA ALBERT MAILO, ATTORNEY GENERAL,**
**ROBERT PORTER, ACTING CHIEF IMMIGRATION OFFICER,**
**ELVIS PATEA, ASSISTANT ATTORNEY GENERAL, Defendants.**

High Court of American Samoa
Trial Division

CA No. 68-97

July 21, 1997

Before RICHMOND, Associate Justice, TUA`OLO, Associate Judge, and LOGOAI, Associate Justice.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendants, Henry W. Kappel, Assistant Attorney General

ORDER DENYING MOTION TO DISMISS
AND ISSUING PRELIMINARY INJUNCTION

■ Plaintiff Tuilefano Vaela`a, in his official capacity as the Chairman of the Immigration Board of American Samoa, brought this action for judicial determination of the validity of the amnesty program, the purpose of which is to legitimate the immigration status of certain undocumented aliens.[1] Defendant Tauese P. Sunia, in his official capacity as the Governor of American Samoa, initiated the program. Defendants Toetogata Albert Mailo, Robert Porter and Elvis Patea, in their respective official capacities as Attorney General of American Samoa, Acting Chief Immigration Officer and Assistant Attorney General, are carrying out the program.

On June 19, 1997, the court heard defendants' motion to dismiss and plaintiff's application for a preliminary injunction and took the motion and application under advisement, establishing a follow-up briefing schedule. Both counsel were present at the hearing. We have considered the testimony, counsel's oral arguments, documents filed before the hearing, and the follow-up briefs and supplements, and will deny the motion to dismiss and grant the application for a preliminary injunction.

---

[1] We use the term "undocumented aliens" in this order to mean aliens who have reached the borders of American Samoa but have not been authorized to remain as residents in American Samoa, pursuant to the immigration laws, A.S.C.A. §§ 41.0201-41.0709, and rules, A.S.A.C. §§ 41.0201-41.1008.

## Motion to Dismiss

Defendants moved to dismiss this action on the grounds that plaintiff lacks both the capacity and standing to sue.

### I. Capacity to Sue

■ Defendants contend that plaintiff has no capacity to sue because there is no statutory authorization for the Immigration Board to sue on its own behalf. Defendants, however, mischaracterize plaintiff's status in this action. Plaintiff is not suing on behalf of the board. Rather he is suing as the person who currently holds the position of Chairman of the Immigration Board. He is the actual real party in interest in a suit which seeks to prevent Executive Branch officials from alleged unlawful exercise of his powers and duties as the Chairman.[2] *See* A.S.C.A. § 43.1101 and T.C.R.C.P. Rule 17.

Thus, we hold that plaintiff has the capacity, and needs no separate statutory authorization, to sue on his own behalf in this action.

### II. Standing to Sue

■ A plaintiff has standing to sue if he shows: (1) an injury to a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) an injury that is causally related to the defendant's challenged conduct, and not resulting from independent action by some third party not before the court; and (3) the prospect of achieving redress for the injury from a favorable decision that is not too speculative. *See Mulitauaopele v. Togafau,* 26 A.S.R.2d 52, 53-54 (Trial Div. 1994) (citing *Northeastern Fla. Chapter of the Assoc. Gen. Contractors of America v. City of Jacksonville, Fla,* 508 U.S. 656, 663-664, 113 S.Ct. 2297, 2301-2302, 124 L.Ed. 2d 586, 595 (1993)).

We believe that the case law respecting the standing of a legislator to sue for an executive branch intrusion into the legislator's duties is both helpful and closely analogous. Clearly, the federal courts and this court recognize a legislator's standing to sue on his own behalf. *See e.g. Senate v. Lutali,* 26 A.S.R.2d 125, 127-129 (Trial Div. 1994) (Order Denying in Part and Granting in Part Motion to Dismiss).

---

[2] We believe this situation is analogous to the situation in which a legislator sues on his own behalf but the action is based upon an alleged usurpation of his powers as a legislator. *See e.g Senate v. Lutali,* 26 A.S.R.2d 125, 127-129 (Trial Div. 1994) (Order Denying in Part and Granting in Part Motion to Dismiss).

The injury in those cases often centers upon the legislator's interest in performing the powers and duties of his office and the impairment that the legislator suffers when his powers, duties and the general efficacy of his office are usurped by executive branch action. *Id.* The injury in those cases is similar to the purported injury in the present case.

■ Here plaintiff is claiming that defendants are usurping his powers and duties as the Chairman of the Immigration Board. This injury is concrete, particularized, and actual. Defendants have already instituted the amnesty program and granted authority to remain to more than 2,000 previously undocumented aliens.

This injury is clearly related to defendants' challenged conduct. Moreover, a favorable ruling on the declaratory relief would redress this injury by requiring defendants to terminate the amnesty program and by allowing plaintiff to exercise the powers and perform the duties of his official position.

We therefore conclude that plaintiff, suing as an individual who holds the office of the Chairman of the Immigration Board, has standing to sue for declaratory relief stating that defendants unlawfully exceeded their authority when they took over the Board's role to authorize aliens to remain in American Samoa.

## Preliminary Injunction

■ Under A.S.C.A. § 43.1301 sufficient grounds for a preliminary injunction exist when:

> (1) there is a substantial likelihood that the applicant will prevail at trial on the merits and that a permanent injunction will be issued against the opposing party; and
> (2) great or irreparable injury will result to the applicant before a full and final trial can be fairly held on whether a permanent injunction should issue.

*I. Substantial Likelihood of Success on the Merits*

■ A court tests substantial likelihood of success by whether the movant has a good chance of success, evaluated in the court's discretion, not measured by any mathematical probability, and taking into account serious issues calling for more deliberate consideration. *Samoa Aviation, Inc. v. Bendall*, 28 A.S.R.2d 101 (Trial Div. 1995).

Comparison of American Samoa's present situation with the federal system is instructive. Although the President, in concert with the Congress, has wide authority to control the country's borders and regulate the admission

92

and exclusion of aliens, the President's authority over immigration matters is limited by the statutory grants of the Congress. *Jean v. Nelson*, 711 F.2d 1455, 1465-66 (11th Cir. 1983), *on reh., en banc* 727 F.2d 957, 963-65 (11th Cir. 1984), *reh. den.* 733 F.2d 908 (11th Cir. 1984), *cert. granted* 469 U.S. 1071 (1984) and *aff'd* 472 U.S. 846 (1985).

An "amnesty" program, somewhat similar to the Governor's amnesty program, has been instituted in the United States. *See* 8 U.S.C.A. § 1255(a). However, as is obvious by the source, this program was instituted by congressional action. The executive branch's power under this program was delegated to it by the Congress.

■ We similarly believe that both the Governor and Legislature of American Samoa have authority to protect American Samoa's borders, but that the Governor must act within the law, as set forth in both the American Samoa Code annotated and the American Samoa Administrative Code.[3] The Governor's authority over immigration matters is limited by the statutory grant of the Legislature. The Legislature has not enacted any amnesty program into law.

■ The law gives the Immigration Board certain powers and duties, A.S.C.A. § 41.0205, including jurisdiction over the issuance to aliens of authorizations to remain in American Samoa. A.S.C.A. §§ 41.0205(1) and 41.0401. The Attorney General is charged with "the administration and enforcement of this title and all other laws relating to the entrance, immigration, registration, and status of aliens, except insofar as this title or such laws relate to the powers, functions, and duties conferred upon the board." A.S.C.A. § 41.0206.

The implementing administrative rules essentially reiterate the Board's powers and duties. A.S.C.A. § 41.0301. The Board has also delegated "all administrative duties" to the Attorney General and immigration officers, as the Attorney General deems necessary. A.S.C.A. § 41.0302. Immigration officers are employed in the Immigration Office, which is an agency within the Department of Legal Affairs, headed by the Attorney General.

The Immigration Board's authority over authorizations to remain in American Samoa vis-à-vis Attorney General's authority over "administration and enforcement" and "administrative duties" is not free of ambiguity. However, we lack sufficient basis in the evidence presented at the hearing to resolve that ambiguity to our satisfaction. Notwithstanding this hiatus, we still note that A.S.C.A. § 41.0201(b) clearly states that the immigration code is to be interpreted and construed to effect the general

---

[3] An administrative rule, adopted under the Administrative Procedures Act, A.S.C.A. §§ 4.1001-4.1044, has the full force and effect of law. A.S.C.A. § 4.1009(c).

93

purpose of the laws limiting entry into American Samoa to persons of American Samoan ancestry, and their spouses and children. Obviously, the amnesty program by legalizing previously undocumented aliens does not effectuate the purpose of limiting entry into American Samoa.

We do not need, however, to fully determine the meaning and scope of A.S.C.A. §§ 41.0205, 41.0206, and 41.0401 and A.S.C.A. §§ 41.0301 and 41.0302, in relation to each other and other provisions of the immigration laws and administrative rules, in order to decide on the issuance of the preliminary injunction. Whether the Attorney General and his subordinates are exercising granted or delegated immigration authority, they can process changes in the status of previously undocumented aliens to resident aliens only on a lawful predicate. Defendants rely on the Governor's pardoning power, not the immigration laws and administrative rules, to validate the amnesty program. Thus, the issue is whether the Governor acted within or in excess of his authority in employing his pardoning power to grant amnesty to undocumented aliens.[4]

Defendants contend that the Governor has unlimited power to grant amnesty under Article IV, Section 9 of the Revised Constitution of American Samoa, which provides that:

> The Governor shall have the power to remit fines and forfeitures, commute sentences, and grants reprieves and pardons after conviction for offenses against the laws of American Samoa.

Defendants believe that this pardoning power may be used in an amnesty program to authorize undocumented aliens to remain in American Samoa. However, although the Governor has the power to pardon, simply naming the present program an "amnesty" program does not bring it within the scope of the Governor's pardoning power.

First, Article IV clearly only allows the Governor to grant pardons, or amnesty, after convictions. Based on the evidence, none of the undocumented aliens benefiting from the amnesty program has been convicted of any violations of the immigration laws. Moreover, even if the Governor was indeed granting pardons, or amnesty, after convictions for any such violations, those pardons would have nothing to do with changing a particular undocumented alien's status. Rather, this situation would be similar to the President of the United States granting undocumented aliens pardons, or amnesty, so the aliens are not automatically ineligible for a visa or automatically excludable. *See* 3A Am. Jur. 2d, *Aliens and Citizens,* 834;

---

[4] For purposes of this order, we accept defendants' position that words "pardon" and "amnesty" are essentially interchangeable, except to recognize that pardons are granted to individuals and amnesty is usually granted to a class or group of persons.

94

8 U.S.C.A. § 1182. The President would not be overriding the immigration laws, but would rather be using his pardon power as it was meant to be used and only granting reprieves for past offenses.

We conclude that the Governor's amnesty program is not a valid exercise of his constitutional pardoning power. Further, even when the Governor properly applies his pardoning power, the Immigration Board or Attorney General, on the Board's behalf, must still issue to the pardoned undocumented alien authorization to remain in American Samoa, in accordance with to the immigration laws and administrative rules. Thus, we hold that there is a substantial likelihood that the plaintiff will prevail at trial on the merits and that a permanent injunction will be issued against the defendants.

*II. Great or Irreparable Injury*

 The concept of great or irreparable injury does not mean an injury that is beyond the possibility of repair without immediate protection. *See Black's Law Dictionary* 924 (4th ed. 1951). It includes wrongs, great or small, that ought not be inflicted on another person, *Id.*, and may consist of "an overbearing assumption by a person of superiority and domination over the rights . . . of others." *Fretz v. Burke*, 55 Cal. Rptr. 879, 883 (1967). The repeated and continuing character of a wrong may be a significant factor. *See Black's Law Dictionary* at 925.[5]

 We believe that defendants' assumption of plaintiff's powers and duties as Chairman of the Immigration Board, and incidentally those of the Board itself, particularly when repeated more than 2,000 times and potentially ongoing if the Governor again extends the amnesty program, is a sufficiently great or irreparable injury to justify a preliminary injunction. The significance of the wrong is further enhanced with respect to both plaintiff and the general public when considered in light of impaired integrity of the immigration laws and the administration of those laws.

Accordingly, we further hold that great or irreparable harm to plaintiff and the general public has resulted, and will continue to result, before a full and final trial on the merits can be fairly held on whether a permanent injunction should issue.

---

[5] Commentators have suggested that the term irreparable injury "adds nothing to the broader concept of inadequacy of the legal remedy, and that both are merely shorthand expressions covering the factors which determine the right to an injunction." *See* B.E. Witkin, 2 *California Procedure* 1500 (2d ed. 1970).

## Order

For the reasons stated above, defendants' motion to dismiss is denied, and plaintiff's application for a preliminary injunction is granted.

During the pendency of this action or until further order of the court, each defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are enjoined from further implementing existing authorizations to remain and from processing additional applications for authorizations to remain in American Samoa to undocumented aliens under the Governor's amnesty program.

We also invoke T.C.R.C.P. Rule 65(a)(2). Any evidence received during the hearing on the application for a preliminary injunction on June 19, 1997, which would be admissible upon the trial on the merits, is part of the record of the trial and need not be repeated at the trial.

It is so Ordered.